UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

PATRICIA PERRY,

Debtor.
___________________/

Chapter 7
Case No. 26-41320-MAR
Hon. Mark A. Randon

**REPLY TO RESPONSE TO MOTION FOR ORDER COMPELLING JACQUELINE ELIZABETH ARD AND TERRY FRANK NICOLA TO VACATE PROPERTY OF THE ESTATE**

Trustee Stuart A. Gold, by his attorney Sandra O'Connor Law, PLLC, submits this reply to Jacqueline E. Ard and Terry F. Nicola's Response and Objection to Trustee's Motion for Order Compelling Them to Vacate Property of the Estate; Request for Hearing; Objection to Procedure; and Request for Alternative Protection Relief ("Response").

**INTRODUCTION**

Jacqueline Elizabeth Ard and Terry Frank Nicola (hereinafter referred to as "Respondents") have a record of efforts "to delay relief, pursue frivolous litigation, pillage the estate, and make materially inaccurate representations to the Court in sworn statements" in their own pending South Carolina Chapter 7 bankruptcy case. *See In re Ard & Nicola*, 25-01384-JD (Bankr. D.S.C. September 4, 2026) Order Denying Motion for Leave and Objection at 8 (attached as Exhibit A.).[1]

[1] The numbering for Exhibit A refers to the numbers at the bottom of the page, which differ from the numbers at the top of the page due to a coversheet.

Respondents have moved to Michigan and now seek to delay efforts to liquidate property of the Patricia Perry bankruptcy estate under a settlement negotiated by the respective trustees of the Michigan and South Carolina cases, and approved by both courts. (See Docket #40 and *In re Ard & Nicola*, 25-01384-JD (Bankr. D.S.C. September 4, 2026) Settlement Order (attached as Exhibit B.)) The Respondents' arguments lack merit and the Motion should be granted to prevent delaying the inevitable sale of 15826 Appoline, Detroit, Michigan ("the Property").

## ARGUMENT

### 1. Respondents Contention That They Were Not Parties to the Settlement is Irrelevant and They Have No Rights to the Property

Respondents correctly note that they were not parties to the settlement that resulted in two (2) court orders approving the compromise in two (2) different states. However, their contention that they may assert "defense[s], possessory interest[s], equitable contention[s], reimbursement claim[s], personal-property interest[s], or procedural right[s]" (Resp. at 4.) grossly overstates the rights that they have. At best, Respondents are officious intermeddlers. At worst, they are unauthorized occupants who have remarkably managed to violate the automatic stay under 11 U.S.C. § 362(a)(3) in two (2) separate bankruptcy cases by moving into the Property without the permission of either estate that had an interest in the Property.

Any interest of Respondents in the Property became property of their own bankruptcy case when they filed it on April 10, 2025. It follows that any possessory

interest, equitable contention, and reimbursement claims associated with the Property are also property of their own bankruptcy estate. They have no standing to assert any such claims, and these claims were explicitly released by their trustee. (See Docket #38 at 14, ¶ 8.)

The Trustee agrees that Respondents have the rights to their personal property at the Property and wants them to remove that personal property. The high volume of personal property is one of the primary reasons that the Trustee filed the Motion.

**2. Respondents Were Not Entitled to Service of the Trustee's Motion for Entry of Order Authorizing Trustee to Compromise Claims**

Respondents are not parties in interest with respect to the Trustee's Motion for Entry of Order Authorizing Trustee to Compromise Claims who were entitled to service of that motion. The settlement agreement only addressed the respective bankruptcy estates' interests in the Property. The Ard & Nicola estate waived any claims of that estate to possession of the Property and simply authorized the Trustee to pursue possession of the property from any person in possession of it. (Id. at ¶ 4.) The settlement did not invoke or affect any existing rights of the Respondents.

In any event, the contention that Respondents were not apprised of the compromise is untrue. They were served with notice of the compromise in the South Carolina case. They objected to the settlement in their own bankruptcy case. The Bankruptcy Court for the District of South Carolina issued a written order denying the objection on the grounds of standing, lack of prosecution, Fourth Circuit

precedent regarding dismissal for failure to prosecute under a four (4) factor test, and on the merits, finding that the benefits of the settlement to that estate far exceeded that estate's actual legal interest in the Property or claims against this bankruptcy estate. (Exhibit A at 5-9.)

The idea that the Respondents did not have standing to object to the exact same compromise in their own bankruptcy case, yet would somehow have standing to object to the compromise in this bankruptcy case, is absurd.

**3. Respondents' Contention That This Matter Should Be an Adversary Proceeding Is Not Supported by the Plain Language of Fed. R. Bankr. P. 7001**

11 U.S.C. § 542(a) is not fully incorporated into Fed. R. Bankr. P. 7001(a). By its plain language, Fed. R. Bankr. P. 7001(a) does not apply to this proceeding.

11 U.S.C. 542(a) provides that "an entity in possession, custody or control, during the case, of property that the Trustee may use, sell, or lease under Section 363 if this title, or that the debtor may exempt under section 522 of this title, shall deliver to the Trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit of the estate."

Fed. R. Bankr. P. 7001(a) states, in pertinent part, that "a proceeding to recover money or property" is an adversary proceeding.

The requirement for "delivery" is not the same thing as "recovery." If Congress intended for Fed. R. Bankr. P. 7001(a) to encompass all proceedings under

11 U.S.C. § 542(a), it would have said so. Or it could have used the same word of "delivery" that appears in 11 U.S.C. § 542(a). Congress did neither of these things.

The meaningful-variation canon must be applied in this case. Where a term is used in one place and a materially different term is used in another place, the United States Supreme Court has applied the well-settled meaningful-variation canon, which creates a presumption that a different term denotes a different idea. *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457-458 (2022). "Delivery" and "recovery" are not synonyms under any common definitions and it would be nonsensical to presume that Fed. R. Bankr. P. 7001(a) incorporates 11 U.S.C. § 542(a) in its entirety where it does not do so explicitly.

There is no common definition of "recovery" that would encompass the relief of someone being required to leave real property. It follows that the Motion is a contested matter. Under Fed. R. Bankr. P. 9014(a) "[i]n a contested matter not otherwise governed by these rules, relief must be requested by motion."

The Property is real property. The Trustee does not need to "recover" the Property. The Trustee does not need a judgment to recover ownership of the Property for the estate (like recovery under 11 U.S.C. § 550 would provide). The Trustee knows where the Property is located and it remains in that place. The Trustee simply needs Respondents to leave the Property so that the Property can be sold.

In fact, the only thing the Trustee seeks to "recover" is keys and garage door openers. If recovery of those items would require an adversary proceeding, the Trustee can waive that request and change the locks on the Property after the date that the Respondents are required to vacate the Property.

Respondents provide a laundry list of asserted rights with respect to the Property in claiming that this matter should be an adversary proceeding, but they have no such rights. (Resp. at 7-8.) Any rights to the Property belonged to their bankruptcy estate and have been waived pursuant to the settlement agreement. The assertion that the Debtors somehow have greater rights to the Property than their estate could waive simply because they violated the automatic stay and moved into the Property after filing for bankruptcy is pure sophistry. All of the rights they describe are rights belonging to their own bankruptcy estate, with the exception of their claim to personal property, which the Trustee wants them to remove anyway.

**4. Respondents' Understanding About How the Trustee Intends to Treat Their Personal Property Is Correct and Any Personal Property Must Be Removed When They Vacate**

The Respondents correctly identify that the Trustee intends to treat any personal property that they may leave behind when vacating the Property as abandoned. The Trustee expects that the Respondents will take any personal property that they wish to keep with them by the deadline to vacate or that such personal property will otherwise be deemed abandoned by them.

**5. Respondents' Concerns About the Difficulties Associated with Moving Are a Problem of Their Own Creation and Do Not Warrant Prejudicial Delay to the Bankruptcy Estate**

Although the Trustee is sympathetic to Respondents' medical issues and other difficulties that they will face when vacating the Property, the Respondents moved into the Property in violation of the automatic stay. Neither trustee ever authorized them to move into the Property.

Respondents seriously misled the court and the trustee in their bankruptcy case about the nature of the Property. As the South Carolina court explained, the Respondents first disclosed a fee simple interest with a co-owner with a value of $2,050.00 on their Schedule A/B, then Ms. Ard testified that she owned the Property with an aunt and that it was worth $10,000.00, and then the Respondents amended Schedule A/B to remove a real property interest and replace it with a description of:

> Contingent executory contract right to purchase real property located at 15826 Appoline St, Detroit, Michigan, conditioned on completion of repairs by Debtor; title held by Patricia Perry; no present legal or equitable ownership; contract not yet performed.[2]

with a value of "unknown" in response to question 30. (See Exhibit A at 2-3; the specific language from the amended Schedule A/B was not included in the Order and has been copied from the amended Schedule A/B in that case at Docket #250 at 12.) Respondents' trustee could not ascertain the nature of the Debtors' interest in

[2] It should be noted that this disclosure directly contradicts Respondents' contentions that they have equitable claims and that judicial estoppel would preclude Respondents from asserting those claims even though it would not prevent their trustee from asserting those claims. *See Stephenson v. Malloy*, 700 F.3d 265, 271-272 (6th Cir. 2012).

the Property until Trustee's counsel contacted the attorney for Respondents' trustee after Jacqueline Ard ultimately admitted that she had a pending bankruptcy case.

Obviously, since the Court has scheduled a hearing on the Motion for October 5, 2026, the resulting order granting the Motion will not provide for a deadline to vacate of October 2, 2026. However, the move out date should not be delayed.

The South Carolina trustee filed and served notice of the proposed compromise on July 30, 2026, which explicitly stated that the Trustee in this case would sell the Property. This notice was served on Respondents. They have known since early August that there was a settlement under consideration that would require them to move so the Property could be sold once the settlement was approved. To the extent that the Respondents were content to sit back and wait, instead of packing and making arrangements to vacate the Property with the knowledge that it would be sold promptly, the burdens associated with failure to promptly prepare to move out should not be borne by the bankruptcy estate.

Additionally, requesting additional time without specifying how much time is needed is not a new strategy for Respondents. In fact, the South Carolina bankruptcy court rejected an emergency motion for continuance filed by Respondents in the South Carolina case where the same considerations had been cited by Respondents on the grounds that the request was not reasonable where it asked for continuance to an unknown date and would impact both estates by

preventing the Court from promptly considering the compromise. *See In re Ard & Nicola*, 25-01384-JD (Bankr. D.S.C. September 1, 2026) Order Denying Debtors' Emergency Motion for Continuance at 8-9 (attached as Exhibit C.)

## CONCLUSION

The Response represents an attempt to simply delay the inevitable. Respondents have such a lengthy history of seeking to delay relief, pursuing frivolous litigation, pillaging their own estate, and making materially inaccurate statements in their own bankruptcy case that the South Carolina court decided it would be an arduous task to list every such instance and instead referred to the "multiple prior orders in this case." (Exhibit A at 8.) The Trustee implores this Court to grant the Motion and to reject Respondents' attempts to poison this case with the same gamesmanship they have employed in their own bankruptcy case.

Respectfully submitted,

SANDRA O'CONNOR LAW, PLLC

Dated: September 18, 2026

/s/ Sandra L. O'Connor
SANDRA L. O'CONNOR (P70984)
Attorney for Trustee
100 N. Pond Drive, Suite A
Walled Lake, MI 48390
(248) 817-6669
sandra@sandraoconnorlaw.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN THE MATTER OF:

| | |
|---|---|
| PATRICIA PERRY, | Chapter 7 |
| | Case No. 26-41320-MAR |
| Debtor. | Hon. Mark A. Randon |

____________________/

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2026, I electronically filed 1) Reply to Response to Motion for Order Compelling Jacqueline Elizabeth Ard and Terry Frank Nicola to Vacate Property of the Estate, 2) Certificate of Service, and 3) Exhibits A-C with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Office of the U.S. Trustee

Stuart A. Gold, Esq.

Sharon Kay Grace-Moore, Esq.

and I also hereby certify that on September 18, 2026, I served by First Class Mail with the United States Postal Service 1) Reply to Response to Motion for Order Compelling Jacqueline Elizabeth Ard and Terry Frank Nicola to Vacate Property of the Estate, 2) Certificate of Service, and 3) Exhibits A-C to the following non-ECF participants:

Jacqueline Elizabeth Ard
21215 Dartmouth Dr.
Southfield, MI 48076

Terry Frank Nicola
21215 Dartmouth Dr.
Southfield, MI 48076

Jacqueline Elizabeth Ard
15826 Appoline
Detroit, MI 48227

Terry Frank Nicola
15826 Appoline
Detroit, MI 48227

SANDRA O'CONNOR LAW, PLLC

Dated: September 18, 2026

/s/ Sandra L. O'Connor
SANDRA L. O'CONNOR (P70984)
Attorney for Trustee
100 N. Pond Drive, Suite A
Walled Lake, MI 48390
(248) 817-6669
sandra@sandraoconnorlaw.com

**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **25-01384-jd**

## Order Denying Motion for Leave and Objection

The relief set forth on the following pages, for a total of 10 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/04/2026**

US Bankruptcy Judge
District of South Carolina

Entered: 09/04/2026

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>JACQUELINE ELIZABETH ARD AND TERRY FRANK NICOLA,<br><br>Debtor(s). | C/A No. 25-01384-JD<br><br>Chapter 7<br><br>**ORDER DENYING DEBTORS' MOTION FOR LEAVE AND OBJECTION** |

The Chapter 7 Trustee (the "Trustee") filed an Application for Settlement (the "Application") on July 30, 2026.[1] Jacqueline Elizabeth Ard and Terry Frank Nicola (collectively "Debtors") were noticed with the Application on the same day. Debtors filed both an Objection to the Application (the "Objection") and a Motion for Leave to File an Untimely Objection (the "Motion for Leave") on August 21, 2026.[2] The Court set the Motion for Leave for hearing on September 2, 2026,[3] to coincide with the hearing on the Application.[4] Debtors sought to continue the hearings on the Motion for Leave and the Application but continuance was denied.[5]

Hearings were held on the Motion for Leave and Application on September 2, 2026. For the reasons set forth herein, the Motion for Leave is

[1] ECF No. 328.
[2] ECF No. 333.
[3] ECF No. 337.
[4] Pursuant to SC LBR 9013-4, the Trustee's Application for Settlement is approved for a passive hearing, meaning the Application could be granted without a hearing if no objection were filed. Passive hearing notices provide a self-scheduled hearing date which is utilized if an Objection is filed. Here, the self-scheduled, passive hearing date was set for September 2, 2026.
[5] ECF No. 343.

denied and the Objection, even if timely, is denied for lack of standing or lack of merit.

## PROCEDURAL HISTORY

This bankruptcy case was filed under chapter 13 on April 10, 2025.[6] It was subsequently converted to chapter 7 after Debtors failed to obtain confirmation of a proposed chapter 13 plan.[7] Claims filed in this case exceed $750,000.00. Any expected recovery on the Application will not make Debtors' estate solvent. To date, the Trustee has liquidated Debtors' South Carolina properties and determined that the funds realized from those sales are insufficient to pay all creditors in full.

The scope of Debtors' estate has not been clearly disclosed through their sworn documents or testimony. The property at issue is located at 15826 Appoline Street, Detroit, Michigan ("the Property"). Debtors initially asserted a fee simple interest in the Property on Schedule A/B and indicated the Property was co-owned with a non-filing party with the estate's interest limited to $2,050.00.[8] Ard later testified that she and an aunt owned the Property and that it was worth approximately $10,000.00.[9] Many months after Ard's testimony, Debtors amended Schedule A/B to remove the Property from the real-property section and, in response to Question 30, asserted an

[6] ECF No. 1.
[7] ECF No. 133 entered September 9, 2025.
[8] *See* Schedule A/B, ECF No. 23.
[9] Confirmation Hearing held Aug. 20, 2025 (ECF No. 110).

interest in the Property based on an alleged executory contract right to purchase it.[10]

The exact nature of Debtors' interest in the Property became apparent on February 9, 2026, when Patricia Perry ("Perry") filed a chapter 7 bankruptcy case in the Eastern District of Michigan.[11] The filings in the Perry case indicate that Perry held legal title to the Property; that no executory contract exists between Perry and Ard concerning the Property; and that Ard held only an unrecorded deed to the Property, not legal title.

Stuart A. Gold (the "Michigan Trustee") was duly appointed as trustee in the Perry case. The Michigan Trustee commenced an adversary proceeding against Ard to avoid the unrecorded quitclaim deed to the Property.[12] Ard answered the complaint and conceded that the transfer was avoidable but asserted certain equitable defenses and claims that are inapplicable to an avoidance action.[13] The Michigan Trustee requested an administrative stay of the adversary upon learning of Ard's pending bankruptcy case in South Carolina. The Michigan Bankruptcy Court entered an order administratively staying the adversary proceeding on May 22, 2026.

Because the Trustee, not Ard, is the real party in interest in the Michigan adversary proceeding, he and the Michigan Trustee worked to

---

[10] *See* Question 30 to Schedule A/B, ECF No. 250. Although the amended Schedule A/B described the interest as an "executory contract right," the Debtors did not list an executory contract on Schedule G. Further, no executory contract was timely assumed, pursuant to 11 U.S.C. § 365, following the conversion of this case to chapter 7.
[11] *See* C/A 26-41320-mar.
[12] *See* Adv. Pro No. 26-4106-mar, at ECF No. 1, 8
[13] *See id.*, at ECF No. 4.

resolve the proceeding to reduce wasting both estates' limited resources. The Application provides that the Michigan Trustee will market and sell the Property, under which Trustee Gold would retain 75% of the net sale proceeds for the Perry estate and pay 25% to Trustee Campbell for Debtors' estate. The settlement further provides that Trustee Campbell may file a claim in the Perry estate for $97,143.94, less whatever is realized by the sale of the Property, and that such a claim would be treated as a tardily filed general unsecured claim under 11 U.S.C. § 726(a)(3).

In this case, the Application was noticed on Debtors. The notice provided that responses, returns, or objections must be filed within twenty-one (21) days of service, and accordingly the last day for objections was set as August 20, 2026. It further provided that a hearing would be scheduled for September 2, 2026, at 10:00 am in Charleston. Debtors filed their Objection one day past the deadline to respond. Debtors contemporaneously filed the Motion for Leave, so the Objection could be considered out of time.[14]

The parallel settlement was approved in the Perry case without objection.[15] The Court set the Motion for Leave hearing for September 2, 2026. Debtors failed to appear for the hearing and the Trustee would not consent to allowing the Objection to be considered out of time. At the hearing on the Application, counsel for the Trustee and counsel for a creditor

[14] Because Debtors were served electronically, the enlargement period of Fed. R. Bankr. P. 9006(f) does not apply.
[15] C/A 26-41320-mar, ECF No. 40.

appeared. The Trustee introduced into evidence the Certificate of Service for the Application, reflecting service on Debtors. Counsel for the Trustee also proffered the Trustee's efforts to settle the Michigan adversary proceeding, the lack of the estate's defenses to that proceeding, the value of the settlement to Debtors' estate, and information concerning the insolvency of Debtors' estate, notwithstanding the settlement.

The Court must now determine whether to grant the Motion for Leave and, if so, consider the merits of the Objection.

## CONCLUSIONS OF LAW

Hearings on the Application and the Motion for Leave were scheduled for September 2, 2026. Debtors were given notice on July 30, 2026, of the hearing date on the Application. Debtors were further provided with notice on August 24, 2026, that the Motion for Leave would be considered at the same hearing. The Court finds that the notices provided comported with due process because they apprised Debtors of the relief sought and afforded them a meaningful opportunity to be heard, which was expressly exercised by requesting an evidentiary hearing in the Objection.[16] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As a threshold matter, Debtors lack standing to file either responsive pleading to the Application. In an insolvent estate, a debtor has no pecuniary interest in the outcome of the estate's administration and therefore lacks

[16] *See* ECF No. 333.

standing to participate in matters concerning the estate, including objecting to claims or, as here, opposing a settlement proposed by the Trustee. *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985). While a debtor may make a showing that there is an affected pecuniary interest, the debtor bears the burden of proof on that issue and must do so by demonstrating a reasonable possibility of a surplus. *One Source Forms & Labels, Inc. v. Callahan (In re Davidson)*, 596 B.R. 841, 846 (Bankr. N.D.Miss. 2019). Because Debtors failed to appear and prosecute, no evidence has been offered by them that this estate is solvent or has any reasonable prospect of solvency. Counsel for the Trustee established that this estate remains insolvent and will stay insolvent after the settlement agreement.[17] Moreover, the Trustee has not identified any legitimate basis to object to claims filed and the settlement appears to be the last asset of value for the Trustee to liquidate, so there is no reasonable hope that there will be any distribution to Debtors. Because Debtors lack a pecuniary interest in the settlement, neither their Motion for Leave nor the Objection can be considered. *Willemain*, 764 F.2d at 1022.

Assuming Debtors had a pecuniary interest, both pleadings are denied for lack of prosecution. Debtors have a duty to appear and prosecute their

[17] The Court notes that because the Application provides that the Property should be listed for sale, the proceeds from this future transaction are, at this stage, hypothetical. However, the Trustee provided information regarding the anticipated sales price of the Property based on assessments from his real estate professional and Trustee Gold's real estate professional. The Court is convinced that, even if the Property sells at the top of the anticipated range, the estate would remain insolvent.

case. Neither Debtor appeared to prosecute the Motion for Leave or the Objection to the Application. Denial of both is an appropriate sanction considering the factors set forth in *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (1990).[18] First, Debtors bear personal responsibility for prosecuting their pleadings. *McCain v. Educ. Credit Mgmt. Corp. (In re McCain)*, 353 B.R. 452, 463 (Bankr. E.D.Va. 2006).

While Debtors made the Court aware of extenuating medical conditions affecting Debtors' ability to travel and the Court is sympathetic to Debtors' circumstances, Debtors received sufficient advanced notice of the hearing on the Application and offered the Court no alternative as to when or if they would ever be available and prepared to prosecute the Motion for Leave and Objection. Second, delay would significantly prejudice creditors of this estate and an estate in another district. In the Perry bankruptcy case, the settlement appears to be the only non-exempt asset available for creditors. The claim of this estate in the Perry case is expected to be the largest and Debtors' creditors will ultimately receive the lion's share of a distribution from that estate. Debtors' case is nearing conclusion and creditors have waited over two years for some distribution from Debtors'

---

[18] "This Circuit requires that the trial court consider four factors before dismissing a case for failure to prosecute: (1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." Hillig v. Comm'r, 916 F.2d 171, 174 (4th Cir. 1990) (citing *Herbert v. Saffell,* 877 F.2d 267, 270 (4th Cir.1989)).

various bankruptcy cases. On the balance, the equities tip in favor of these creditors. Third, Debtors have a history of proceeding in a dilatory fashion and there is a drawn-out history. While this Order will not recite the full record of Debtors' efforts to delay relief, pursue frivolous litigation, pillage the estate, and make materially inaccurate representations to the Court in sworn documents, the multiple prior orders entered in this case speak for themselves and support a finding under the third *Hillig* factor. Finally, the Court finds that no less drastic sanction will adequately address Debtors' conduct. The Application has already been approved by the Michigan bankruptcy court. The Court, in its discretion, found no alternative but to promptly consider the same.

Finally, the Application is well supported by the proffer of evidence and Debtors' prior sworn statements and testimony. The Court finds that the value of any claim of this estate may have to the Property is $0.00 for two reasons. First, the Michigan Trustee identified a legally valid and, as a practical matter, unassailable means of extinguishing any ownership interest Debtors' estate may have claimed in the Property. Ard's counterclaims in that proceeding, though legally baseless, provide no meaningful avenue for recovery; any value they could conceivably yield will be recaptured by the Trustee through the allowance of a corresponding claim in the Perry bankruptcy estate. Second, if Debtors ever possessed an executory contract to purchase the Property, any rights arising under that contract were

extinguished when Debtors failed to timely assume it in this bankruptcy case. 11 U.S.C. § 365(d)(1). Moreover, through the settlement, the Trustee expects to realize between four and forty times the various values Debtors have attributed to the Property in their sworn schedules and prior testimony. The settlement was negotiated at arm's length, represents the Trustee's best business judgment, and was not opposed by any creditor or other party in interest. In sum, the Court finds that the settlement provides a significant and substantial benefit to this estate that far exceeds the estate's actual legal interest in the Property or claim against the Perry estate. Indeed, on this record, no timely objection could have provided a legally cognizable basis for rejecting the settlement.

It is, therefore, ORDERED:

1. Debtors' Motion for Leave and Objection are DENIED for lack of standing;
2. Debtors' Motion for Leave and Objection are DENIED for lack of prosecution; and
3. Assuming the Objection was timely and Debtors have standing, the Objection is denied on the merits.

**AND IT IS SO ORDERED.**

**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **25-01384-jd**

## Settlement Order

The relief set forth on the following pages, for a total of 3 pages including this page, is hereby ORDERED.

---

**FILED BY THE COURT**
**09/04/2026**

US Bankruptcy Judge
District of South Carolina

Entered: 09/04/2026

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | B/K Case No. 25-01384-JD |
| JACQUELINE ELIZABETH ARD and | ) | |
| TERRY FRANK NICOLA | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

---

**SETTLEMENT ORDER**

---

THIS MATTER comes before this Court upon the Application for Settlement filed by Kevin Campbell, the Chapter 7 Trustee for Jacqueline Elizabeth Ard and Terry Frank Nicola ("Trustee Campbell") and Stuart A. Gold, the Chapter 7 Trustee for Patricia Perry ("Trustee Gold"). There were no timely objections to the Application filed by a party in interest.

The Court was advised that on April 10, 2025, the above Debtors filed a Chapter 13 petition in the United States Bankruptcy Court for the District of South Carolina. The case was subsequently converted to Chapter 7. Kevin Campbell was duly appointed as the Chapter 7 Trustee in this case. In the amended Schedule A/B filed with this Court on February 18, 2026, in question 30, the Debtors disclosed a "contingent executory contract right to purchase real property located at 15826 Appoline St., Detroit, Michigan, conditioned on completion of repairs by Debtor; title held by Patricia Perry; no present legal or equitable ownership; contract not yet performed." The Debtors indicated that this asset had an unknown value.

On February 9, 2026, Patricia Perry filed a Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of Michigan ("Michigan Bankruptcy Court") in case no. 26-41320-mar. Stuart A. Gold was duly appointed as the Trustee in that case.

It was determined that on November 9, 2017, a deed was recorded making Perry the sole owner of real property at 15826 Appoline St., Detroit, Michigan 48227 ("the Property"). On or about May 31, 2019, Perry executed a quitclaim deed purporting to transfer her interest in the Property to Ard ("the Transfer"). This 2019 deed was never recorded.

It is Trustee Gold's position that the Transfer is avoidable because the Transfer was not perfected by recording the deed as required by Michigan law and is therefore unenforceable against Trustee Gold as a hypothetical bona fide purchaser under 11 U.S.C. § 544(a)(3). As such, Trustee Gold has filed an adversary proceeding in the Perry bankruptcy case seeking to avoid the Transfer. At the time of the filing of the Complaint, Trustee Gold was unaware of the Ard's bankruptcy filing. The Debtors filed an Answer and subsequently advised Trustee Gold of their own bankruptcy filing. Trustee Gold contacted Trustee Campbell to advise him of this litigation and to confirm the Ard bankruptcy case was still pending. Upon confirmation, Trustee Gold promptly notified the Michigan Bankruptcy Court and requested that the matter be stayed.

The parties have agreed to resolve this matter in which Trustee Campbell waives any claims by the Ard bankruptcy estate to possession of the Property and agrees that Trustee Gold may immediately pursue possession of the Property from any person or entity in possession of the Property without notice to Trustee Campbell to enable Trustee Gold to secure, market, and sell the Property. Nothing in this Settlement Agreement shall be construed as abandoning, revesting in Ard,

or otherwise transferring to Ard any possessory rights or claims that are or were property of the Ard bankruptcy estate.

After the sale of the Property, Trustee Gold shall determine the total amount of net proceeds from the sale. Trustee Gold shall retain 75% of the net proceeds for the benefit of the Perry estate. Trustee Gold shall pay 25% of the net proceeds to Trustee Campbell for the benefit of the Ard estate.

Trustee Campbell shall be entitled to file a proof of claim in the Perry case in the amount of $97,143.94, less the proceeds received by the Ard estate under paragraph 4, within fourteen (14) days of receipt of the Ard estate's share of the sale proceeds. This claim shall be treated as a tardily filed general unsecured claim under 11 U.S.C. § 726(a)(3) notwithstanding the date the claim is filed. The claim shall be deemed allowed if filed in accordance with this paragraph.

The Court was further advised that Trustee Campbell was informed and believes, using his business judgment as trustee, that settlement of this matter is in the best interest of the estate and its creditors as it provides for reasonable resolution of this matter without the necessity of further litigation. If the matter were to proceed, it would be costly to the estate and its creditors as Michigan counsel would need to be retained to litigate this matter with no guarantee of a more beneficial result.

I FIND that this matter is properly before this Court and that there were no timely objections filed to the Application filed by a party in interest.

I FURTHER FIND that adequate cause exists and that it is in the best interest of the estate and its creditors if this settlement is approved. It is, therefore

ORDERED, ADJUDGED and DECREED that the settlement reached between the parties is hereby approved on the terms recited herein.

IT IS SO ORDERED!

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE:<br><br>JACQUELINE ELIZABETH ARD AND TERRY FRANK NICOLA,<br><br>Debtor(s). | C/A No. 25-01384-JD<br><br>Chapter 7<br><br>**ORDER DENYING DEBTORS' EMERGENCY MOTION FOR CONTINUANCE** |

The Chapter 7 Trustee (the "Trustee") filed an Application for Settlement (the "Application") on July 30, 2026.[1] The Application and notice and opportunity for a hearing were served on the same day.[2] Jacqueline Elizabeth Ard and Terry Frank Nicola (collectively "Debtors") filed an Objection to the Application (the "Objection") and a Motion for Leave to File an Untimely Objection (the "Motion for Leave").[3] The Court set the Motion for Leave for hearing on September 2, 2026,[4] to coincide with the hearing on the Application.[5]

On August 28, 2026, Debtors filed an "Emergency Motion to Continue September 2, 2026, Evidentiary Hearing Due to Acute Medical and Caregiving Emergency and Inability to Meaningfully Prepare for or

[1] ECF No. 328.
[2] *See also* SC LBR 9019-9 and Exhibit A to 9013-4.
[3] ECF No. 333.
[4] ECF No. 337.
[5] Pursuant to SC LBR 9013-4, the Trustee's Application for Settlement is approved for a passive hearing, meaning the Application could be granted without a hearing if no objection were filed. Passive hearing notices provide a self-scheduled hearing date which is utilized if an Objection is filed. Here, the self-scheduled, passive hearing date was set for September 2, 2026.



**EXHIBIT C**

Participate in Evidentiary Hearing" (the "Emergency Motion").[6] For the reasons set forth below, Debtors' Emergency Motion is denied.

**PROCEDURAL HISTORY**

This bankruptcy case was filed under chapter 13 on April 10, 2025.[7] It was subsequently converted to chapter 7 after Debtors failed to obtain confirmation of a proposed chapter 13 plan.[8] Debtors originally disclosed a fee simple interest in real property located at 15826 Appoline Street, Detroit, Michigan (the "Property") on Schedule A/B in the amount of $2,050.00.[9] Later, Debtors amended Schedule A/B, removing the Property from the real-property section and listing an asserted interest in response to Question 30, which requires disclosure of any "[o]ther amount someone owes you." Debtors disclosed a "[c]ontingent executory contract right to purchase real property located at 15826 Appoline Street, Detroit, Michigan, conditioned on completion of repairs by Debtor; title held by Patricia Perry; no present legal or equitable ownership; contract not yet performed."[10] Although the amended Schedule A/B described the asserted interest as an 'executory contract right,' the Debtors did not list an executory contract on Schedule G.[11] Ard testified at the August 20, 2025 confirmation hearing that she and an aunt owned the

[6] ECF No. 340.
[7] ECF No. 1.
[8] ECF No. 133 entered September 9, 2025.
[9] *See* Schedule A/B, ECF No. 23.
[10] *See* Question 30 to Schedule A/B, ECF No. 250.
[11] ECF No. 33.

Property and that it was worth approximately $10,000. She further testified that the Property was unoccupied because of its condition.

On February 9, 2026, Patricia Perry ("Perry") filed a chapter 7 bankruptcy case in the Eastern District of Michigan.[12] Stuart A. Gold (the "Michigan Trustee") was duly appointed as trustee in the Michigan case. In that case, the Michigan Trustee commenced an adversary proceeding against Ard seeking to avoid the unrecorded quitclaim deed to the Property.[13] After learning of this pending case, the Michigan Trustee requested an administrative stay, and the Michigan Bankruptcy Court entered an order administratively staying the adversary proceeding on May 22, 2026.

In this case and the Perry case, the respective chapter 7 trustees filed notices seeking approval of a compromise concerning the competing estate interests in the Property. The Application provides that the Michigan Trustee will market and sell the Property, under which Trustee Gold would retain 75% of the net sale proceeds for the Perry estate and pay 25% to Trustee Campbell for Debtors' estate. The settlement further provides that Trustee Campbell may file a claim in the Perry estate for $97,143.94, less whatever is realized by the sale of the Property and that such a claim would be treated as a tardily filed general unsecured claim under 11 U.S.C. § 726(a)(3). In this case, the Application provided that responses, returns, or objections must be filed within twenty-one (21) days of service, and accordingly the last day for

---

[12] *See* C/A 26-41320-mar.
[13] *See* Adv. Pro No. 26-4106-mar.

objections was set as August 20, 2026. It further provided that a hearing would be scheduled for September 2, 2026, at 10:00 am in Charleston. Debtors were electronically served with the Application on July 30, 2026, but filed their Objection a day past the deadline to respond and contemporaneously sought leave to file out of time.[14] The parallel settlement was approved in the Perry case without objection.[15]

**CONCLUSIONS OF LAW**

"The Bankruptcy Code together with the Bankruptcy Rules are meant to be 'construed, administered, and employed … to secure [a] just, speedy, and inexpensive determination of every case and proceeding.'" *In re Malloy*, 2026 WL 2058195, at *14 (Bankr. E.D. Va. July 15, 2026) (quoting Fed. R. Bankr. P. 1001(a)). Federal Courts have inherent authority to manage their dockets. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). "A motion for a continuance is within the [trial] court's discretion[.]" *In re Wilson*, 2015 WL 1929711, at *2 (Bankr. D.S.C. Apr. 27, 2015) (quoting *Berry v. Gutierrez*, 587 F.Supp.2d 717, 722 (E.D.Va.2008) *aff'd sub nom*. *Berry v. Locke*, 331 Fed. Appx. 237 (4th Cir.2009)). "A trial court, of course, must control its docket and docket expedition is a legitimate and worthy concern." *United States v. Colon*, 975 F.2d 128, 130 (4th Cir. 1992).

---

[14] Because Ard was served electronically, the enlargement period of Fed. R. Bankr. P. 9006(f) does not apply.
[15] C/A 26-41320-mar, ECF No. 40.

The docket reflects prior requests by Debtors for continuances and/or remote appearances often sought on the eve of a hearing.[16] The Court has previously emphasized that even *pro se* parties are required to comply with the procedures outlined in the Court's Common Chambers Guidelines.[17] Here, Debtors' Emergency Motion appears to be in substantial compliance with Chambers' Guidelines. Debtors were unable to obtain consent to a continuance, and as such, a Motion was filed which reported movants' good faith effort to consult with all opposing counsel and detailed the reason for the request. However, for the reasons detailed below, the Court denies the request.

There are two matters set for hearing on September 2, 2026 – the hearing on the Trustee's Application for Settlement, and the hearing on Debtors' Motion for Leave. The Emergency Motion expressly seeks a continuance of the hearing on the Motion for Leave.[18] However, out of caution, and because Debtors are proceeding *pro se*, the Court will construe the Emergency Motion as seeking a continuance of both hearings set for September 2, 2026.[19] Notably, the Emergency Motion does not propose a specific alternative hearing date or otherwise identify when the Debtors reasonably expect to be available to proceed. Rather, it requests a

---

[16] *See e.g.,* ECF Nos. 88, 101, and 247.
[17] *See* ECF No. 248.
[18] *See* ECF No. 340, p.1 ("[Debtors] respectfully move for a reasonable continuance of the evidentiary hearing … on Debtor Ard's Motion for Leave to File Objection Out of Time.").
[19] Pleadings drafted by *pro se* litigants are held to less stringent standards than pleadings drafted by lawyers, and the Court must construe them liberally. *In re Loy*, 448 B.R. 420, 437 (Bankr. E.D. Va. 2011).

continuance until the next evidentiary-hearing date that both affords sufficient preparation time and follows the "stabilization of present medical circumstances." Because the requested timing is contingent on an unspecified future event, the Emergency Motion does not provide the Court with a definite alternative date on which to reschedule the matter.[20]

**I. Continuance of Hearing on Debtors' Motion for Leave.**

The Emergency Motion asserts that the August 24 notice newly designated the hearing on the Motion for Leave as an evidentiary hearing and that acute caregiving and medical circumstances prevent meaningful preparation and participation.[21] However, Rule 9014(e) requires only "reasonable" notice when a contested hearing will be treated as an evidentiary hearing. *See In re Kazi Foods of Mich., Inc.,* 473 B.R. 711, 716 (Bankr. E.D. Mich. 2012).

Debtors filed the Motion for Leave on August 21, 2026, specifically requesting "a meaningful opportunity to be heard before the proposed compromise is approved."[22] The Court set the matter for hearing with the 9014(e) designation on the next business day, providing nine days' notice ahead of the hearing. The Motion for Leave was filed one day after the objection deadline and twelve days before the scheduled hearing. On this

[20] The Court previously denied Debtors' request for flexible scheduling wherein they requested to be allowed to arrive at hearings within 60 minutes or more of the scheduled hearing time. ECF No. 90.
[21] *See* ECF No. 337.
[22] *See* Declaration of Jacqueline Elizabeth Ard in Support of Motion for Leave to File Objection Out of Time at ECF No. 334, ¶ 17.

record, the Court finds that the nine days' notice provided reasonable notice for the hearing on the Motion for Leave.

Further, Debtors, in the Objection, specifically requested an evidentiary hearing on the Application, pursuant to Fed. R. Bankr. P. 9014(e). The Emergency Motion distinguishes between prior notice of hearing on the Application and the later designation of the Motion for Leave. In the Objection, Debtors requests an evidentiary hearing on the Application scheduled for September 2, 2026. Objection ¶ 110. In the Emergency Motion, Debtors indicate that they are unprepared for an evidentiary hearing on the Motion for Leave, also scheduled for September 2, 2026. Emergency Motion ¶¶ 6-8. Debtors appear to be essentially asserting that they are prepared to address the merits of their Objection but not the merits of whether their Objection should be considered.[23] Debtors' request for an evidentiary hearing on the Objection weighs against a continuance, but does not by itself resolve their asserted inability to prepare for an evidentiary presentation on excusable neglect. Even so, considering the timing of the Motion for Leave, the existing record, the lack of any firm alternative date, and the need to resolve the pending matters promptly, the Court denies the Emergency Motion insofar as it seeks a continuance on the Motion for Leave.

---

[23] *See Id.* at Sec. XVI ("Debtor's respectfully request that the hearing proceed. … Debtors further request an evidentiary hearing. …). *See also* the "Prayer for Relief", requesting the Court "[c]onduct the hearing presently identified for September 2, 2026, or set another hearing at the Court's earliest convenience".

## II. Continuance of Hearing on the Trustee's Application for Settlement.

Debtors were given notice on July 30, 2026, that a hearing would be held on the Application for Settlement on September 2, 2026, if any objections, replies, or responses were filed. Debtors' August 21 filing demonstrates that they were aware of the September 2 hearing date before filing their Objection and Motion for Leave.[24] For purposes of this continuance motion, the Court finds that the notice provided comported with due process because it apprised Debtors of the relief sought and afforded them a meaningful opportunity to be heard, which was expressly exercised by requesting an evidentiary hearing in the Objection.[25] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).The Court will not continue the hearing based on the reasons stated in the Emergency Motion. The request is not reasonable as it seeks to continue the matter to an unknown date–potentially months away–prejudicing two bankruptcy estates. According to Ard's prior sworn schedules and testimony, the Property at issue would not make this estate solvent and Debtors' standing to oppose such a settlement is therefore not clear.[26] Consideration of the Application is necessary to resolve the issues between two overlapping bankruptcy estates.

---

[24] ECF No. 334, ¶¶2, 3 ("I received notice of the proposed settlement concerning 15826 Appoline Street. I intended to respond[.]").
[25] *See* ECF No. 333.
[26] This is a chapter 7 case. The estate is insolvent and, as such, Debtors lack standing to object. *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir. 1985). If Ard's prior sworn statements about the Property are true, this settlement would not make the estate solvent. The Court does not reach, and expresses no view on, the Debtors' standing to object or the ultimate merits of the Application in this order.

The Michigan court has already approved the compromise and this Court must promptly consider the same.

It is, therefore, ORDERED:

1. Debtors' Emergency Motion to Continue the hearing on the Motion for Leave is DENIED;
2. Debtors' Emergency Motion to Continue the hearing on the Application for Settlement is DENIED; and
3. A hearing on both matters will be held on September 2, 2026, at 10:00 AM in Charleston at the United States Bankruptcy Court, 145 King Street, Room 225, Charleston, South Carolina.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**09/01/2026**

Entered: 09/01/2026

US Bankruptcy Judge
District of South Carolina