UNITED STATES BANKRUTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISON

IN THE MATTER OF:

| | |
|---|---|
| PATRICIA PERRY, | Chapter 7 |
| | Case No. 26-41320-MAR |
| Debtor. | Hon. Mark A. Randon |

_____________________/

**MOTION REQUESTING CONSIDERATION OF REFERRAL PURSUANT TO 18 U.S.C. § 3057(a), PRESERVATION OF EVIDENCE, DISCLOSURE OF THE FACTUAL BASIS FOR REPRESENTATIONS CONCERNING THE SOUTH CAROLINA ESTATE, AND SUCH OTHER APPROPRIATE RELIEF**

Jacqueline E. Ard ("Ard"), appearing pro se, respectfully moves this Court to consider whether the documented facts and circumstances described below provide reasonable grounds for referral to the appropriate United States Attorney pursuant to 18 U.S.C. § 3057(a), and further requests preservation of evidence and such limited disclosure or other relief as is necessary to protect the integrity of the property and financial issues now implicated in this Michigan proceeding.

This Motion does not ask this Court to determine that a crime occurred, impose criminal liability, review or reverse an order of the United States Bankruptcy Court for the District of South Carolina, or adjudicate the merits of pending South Carolina appeals.

Rather, Ard presents a documented financial chronology involving approximately $865,919.29 in reported sales of four properties, substantial payments from those sales to creditors whose debts and claims were disputed, material differences among judgment amounts, proofs of claim, payoff amounts, and closing distributions, post-sale amendments to HOA proofs of claim, satisfactions of judgment, and approximately $318,026.82 in aggregate net sale

proceeds that the Trustee's individual Reports of Sale represented as retained by the estate.

The most recent of those sales occurred June 29, 2026. The Trustee's Report for that transaction expressly represented that $153,454.84 was retained by the Trustee and that none of that property's net proceeds had been disbursed as of the report. (ECF 325)

Ard further states that she has repeatedly requested information concerning the current financial condition of her bankruptcy estate, including what funds remain, what funds have been disbursed, what claims remain payable, and the present estate balance, but has not received a current consolidated accounting resolving those questions.

More than ninety days have now elapsed since the final June 29 sale, yet Ard contends that no updated estate ledger, interim accounting, or other consolidated reconciliation has been filed or supplied to her showing what became of the net proceeds reported as retained by the Trustee.

The absence of such information is particularly significant because the financial condition of Ard's South Carolina estate is now being invoked in litigation concerning property claimed from Ard in Michigan.

For these reasons, Ard respectfully requests independent examination rather than acceptance of unsupported conclusions concerning the South Carolina estate's present financial condition.

## I. LIMITED NATURE OF REQUESTED RELIEF

This Motion seeks investigation, preservation, and factual transparency—not an adjudication of criminal guilt.

Ard does not ask this Court to find that South Carolina Chapter 7 Trustee Kevin Campbell, any creditor, attorney, homeowners' association, judicial officer, or other person committed bankruptcy fraud.

Nor does Ard ask this Court to sit as an appellate tribunal over the South Carolina Bankruptcy Court. The request is substantially narrower.

Under 18 U.S.C. § 3057(a), when a judge, receiver, or trustee has reasonable grounds for believing that an offense relating to bankruptcy has occurred, or that an investigation should be had in connection therewith, the relevant facts and circumstances are to be reported to the appropriate United States Attorney.

The statutory question is therefore not whether Ard has independently established a federal crime beyond a reasonable doubt. The question is whether the documented circumstances warrant examination by the authorities Congress empowered to conduct such an investigation.

Ard respectfully submits that the financial record described below meets that threshold.

## II. JURISDICTION AND RELEVANCE TO THE MICHIGAN PROCEEDING

The transactions described below arose principally in In re Jacqueline Elizabeth Ard and Terry Frank Nicola, Case No. 25-01384-jd, pending in the United States Bankruptcy Court for the District of South Carolina. They have nevertheless become materially relevant here.

The Perry Trustee seeks recovery of the Appoline property or its value from Ard. Ard asserts substantial ownership, equitable, possessory, reimbursement, lien, setoff, recoupment, and other interests in that property.

At the same time, Ard's own bankruptcy estate remains open and under Chapter 7 administration in South Carolina.

The financial status of that estate therefore matters. Assertions that Ard's estate remains insolvent, requires additional recoveries, or cannot relinquish assets have potential consequences for Ard's property interests and the positions being advanced in this Michigan litigation.

Where another bankruptcy estate's alleged insolvency is relied upon as a material premise affecting the disposition of property before this Court, Ard respectfully submits that the factual

numbers supporting that premise should be identifiable.

## III. STATUTORY STANDARD UNDER 18 U.S.C. § 3057

Section 3057(a) provides a mechanism for reporting facts concerning possible bankruptcy-related offenses when there are reasonable grounds to believe either that an offense has occurred or that an investigation should be conducted. The latter language is significant.

Congress did not require a bankruptcy judge to resolve disputed criminal intent before referral. Investigation is the mechanism through which records can be obtained, witnesses interviewed, transactions traced, and innocent explanations distinguished from misconduct.

Ard therefore requests no criminal finding. She requests consideration of referral of a documented financial record whose material discrepancies have not been reconciled.

IV. STATUTORY DUTIES OF THE CHAPTER 7 TRUSTEE

The Bankruptcy Code imposes affirmative duties upon a Chapter 7 trustee that are directly relevant to the present circumstances.

**Under 11 U.S.C. § 704(a)(1)**, a Chapter 7 trustee must:

"collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."

Section 704 further requires the trustee to:

**§ 704(a)(2):** "be accountable for all property received";

**§ 704(a)(5):** where a purpose would be served, examine proofs of claim and object to the allowance of improper claims;

**§ 704(a)(7):** unless the Court orders otherwise, furnish information concerning the estate and its administration when requested by a party in interest; and

**§ 704(a)(9):** make a final report and file a final account of the administration of the estate.

These duties are significant here because Ard alleges that she has repeatedly requested an accounting and information concerning the present financial condition of her estate, yet the Trustee has not supplied a current consolidated ledger or updated the public record with a reconciliation showing the disposition of the substantial net proceeds reported as retained following liquidation.

Ard does not contend that § 704 requires a trustee to file a final report immediately upon the last real-property closing while other legitimate administration remains pending. Rather, the point is that §§ 704(a)(1), (2), (7), and (9), considered together, reflect Congress's requirement of expeditious administration, accountability, information concerning administration, and ultimate financial reconciliation.

That statutory framework makes the continuing absence of an updated accounting particularly relevant where the Trustee or other parties simultaneously characterize the estate as insolvent.

## V. LIQUIDATION OF THE FOUR SOUTH CAROLINA PROPERTIES

Between April 30 and June 29, 2026, the Trustee completed the liquidation of four substantial real-estate assets.

The Trustee's Reports of Sale establish the following aggregate results:

| Property | Sale Date | Reported Price | Reported Net to Estate |
|---|---|---|---|
| Unit 4408 | April 30, 2026 | $226,600.00 | $0.00 |
| Unit 1106 | May 13, 2026 | $173,996.46 | $108,891.52 |
| Unit 3218 | May 14, 2026 | $236,500.00 | $55,680.46 |
| Unit 4405 | June 29, 2026 | $228,822.83 | $153,454.84 |
| Total | | $865,919.29 | $318,026.82 |

The final property, Unit 4405, closed June 29, 2026. The Trustee reported a price of $228,822.83, expenses of $54,567.99, and $153,454.84 net to the estate. More importantly for present purposes, the report expressly states:

"$ -0- disbursed to date; $153,454.84 retained by Trustee." (ECF 325)

Accordingly, $318,026.82 is not presented as Ard's calculation of the present surplus. It is the aggregate of the amounts the individual Reports of Sale identified as net proceeds flowing into and retained by the estate from three of the four sales.

The present amount remaining is precisely what Ard has attempted to determine.

## VI. MORE THAN NINETY DAYS WITHOUT A CURRENT CONSOLIDATED ACCOUNTING

As of the filing of this Motion, more than ninety days have elapsed since the June 29, 2026 closing of the last of the four properties.

Ard states that during this period she has requested on multiple occasions that the Trustee provide the current financial status of the estate, including:

the present estate cash balance;

amounts disbursed since the sales;

the recipients of those distributions;

the authority for each distribution;

administrative and professional expenses paid or accrued;

remaining allowed claims;

remaining disputed claims;

tax obligations;

property and causes of action remaining in the estate;

and the amount, if any, ultimately available for return to the Debtors.

Despite those requests, Ard contends that the Trustee has not supplied her with a current consolidated accounting ledger and has not updated the docket with a report permitting the $318,026.82 of reported net sale proceeds to be reconciled against subsequent disbursements.

This matters independently of any allegation of criminal conduct.

Section 704(a)(1) imposes a duty to close the estate "as expeditiously as is compatible with the best interests of parties in interest," while § 704(a)(2) requires accountability for estate property and § 704(a)(7) generally requires requested information concerning estate administration.

Thus, if substantial administration legitimately remains, Ard respectfully submits that its nature and financial consequences should be capable of explanation.

And if substantial distributions have occurred since June 29, those distributions should likewise be capable of reconciliation against the estate's reported receipts.

## VII. ASSERTIONS OF INSOLVENCY CANNOT SUBSTITUTE FOR THE UNDERLYING NUMBERS

Ard has been confronted with the assertion that her bankruptcy estate is insolvent.

Yet the Reports of Sale document $318,026.82 in aggregate net proceeds flowing to the estate.

Without an updated accounting, neither Ard nor this Court can determine whether that amount has subsequently been:

distributed to allowed creditors;

used for authorized administrative expenses;

reserved for disputed claims;

reserved for professional compensation;

used to pay taxes;

held pending resolution of litigation;

or remains substantially in the Trustee's account.

An assertion of insolvency is ultimately a mathematical proposition.

The appropriate inquiry is:

Estate funds received

minus authorized distributions and expenses

equals current estate funds

which must then be compared against:

remaining allowed claims and properly chargeable administrative obligations.

Ard respectfully submits that the absence of those numbers does not itself establish fraud or concealment.

But where insolvency is asserted while substantial receipts are documented and the party in interest repeatedly requesting the underlying accounting has not received it, the representation cannot presently be independently tested.

When combined with the additional discrepancies described below, that circumstance supports preservation and independent investigation.

## VIII. THE SALE ORDER REQUIRED DISPUTED AMOUNTS TO REMAIN WITH THE PROCEEDS

The February 23, 2026 Sale Order is particularly important because it demonstrates that the Court itself recognized that the amounts asserted by lienholders were not necessarily fixed.

With respect to Estate at Westbury, the Sale Order identified a January 2025 judgment of $22,625.02 and Proof of Claim 29-1 for $23,540.02.

The Order then provided:

"To the extent there is a dispute as to the amount owed, the lien shall attach to the sale

proceeds until the issues can be resolved either through consent or Order of this Court."

Thus, the operative question is not whether Ard merely disagreed with the creditors.

The Court expressly contemplated unresolved disputes and prescribed a mechanism for preserving the disputed funds.

The relevant investigative question is therefore:

What consent or subsequent Court order resolved each disputed amount before the money was released?

## IX. ESTATE AT WESTBURY — CLAIM AND PAYMENT DISCREPANCIES

Westbury's Claim 29 illustrates the problem.

The claims register establishes that Westbury originally filed Claim 29-1 on July 10, 2025 for $23,540.02. It amended the claim on March 11, 2026 to $37,035.01, an increase of $13,494.99.

The Trustee's closing records nevertheless reflect a payment of $38,622.75 to Westbury.

Thus:

Original Claim 29-1: $23,540.02

Amended Claim 29-2: $37,035.01

Closing payment: $38,622.75

The payment exceeded the amended claim by $1,587.74 and the original claim by $15,082.73.

Westbury subsequently filed a Satisfaction and Release on July 7, 2026 expressly acknowledging consideration and "forever satisfy[ing] and discharge[ing]" the $37,035.01 judgment.

The claims register reviewed through September 22 continues to reflect Claim 29 at $37,035.01.

Unlike Hilton Head Resort and The Spa, the records presently before Ard do not show a post-satisfaction amendment by Westbury. The relevant Westbury issue is instead the discrepancy among its original claim, amended claim, judgment, satisfaction, and the greater amount actually paid at closing.

## X. HILTON HEAD RESORT — SATISFACTION FOLLOWED BY POST-SATISFACTION AMENDED CLAIM

Hilton Head Resort presents a different and particularly important chronology.

Claim 26 was originally filed June 18, 2025 for: $116,120.78.

It was amended January 20, 2026 to: $116,964.43.

The claims register then shows that on July 8, 2026, Hilton Head Resort filed another amended proof of claim, Claim 26-3, for: $92,731.78. But Hilton Head Resort had already filed a Satisfaction of Judgment on June 2, 2026, expressly acknowledging satisfaction of its January 9, 2024 money judgment against Ard and Nicola.

Thus the chronology is:

June 2, 2026: Satisfaction of Judgment filed.

July 8, 2026: Amended Proof of Claim 26-3 filed for $92,731.78.

The July amendment did not increase the immediately preceding $116,964.43 claim—it reduced it by $24,232.65. But the legally significant issue is that a $92,731.78 bankruptcy claim remained asserted through an amendment filed after satisfaction of the underlying judgment identified in the satisfaction document.

That sequence requires reconciliation.

The appropriate questions include:

What obligations comprised the $92,731.78?

Which portions, if any, were distinct from the satisfied judgment?

What payments had already been received from the property sales?

Were those payments credited?

What lien or contractual rights allegedly remained?

And did the Trustee examine the amended claim against the prior satisfaction and closing distributions?

## XI. THE SPA — $31,084.41 CLAIM BECAME $105,716.77 AFTER SATISFACTION THROUGH FORECLOSURE

The Spa chronology is even more pronounced.

The claims register establishes that The Spa originally filed Claim 28-1 on June 20, 2025 for: $31,084.41.

The claim was expressly based upon an "Order for Judgment filed in Beaufort County Circuit Court."

The state-court docket subsequently reflects a Satisfaction of Judgment Through Foreclosure on June 18, 2026.

Nevertheless, on August 13, 2026, The Spa filed Amended Claim 28-2 for:

$105,716.77.

The claims register describes the amendment as "amounts not paid upon sale of Spa unit" and identifies asserted "inchoate lien rights for unpaid HOA fees, late fees, and attorneys" fees. Claims Register 9.22.26

Accordingly:

Original Claim 28-1: $31,084.41

Judgment satisfied through foreclosure: June 18, 2026

Amended Claim 28-2: $105,716.77

Increase over original claim: $74,632.36

That represents an increase of approximately 240% over the original $31,084.41 claim, filed after the state docket reflected satisfaction of the judgment through foreclosure.

This does not, standing alone, establish that the amended claim was unlawful. The amendment itself asserts that additional amounts remained unpaid.

But that is precisely why investigation and claim reconciliation are warranted.

The Trustee's duties under § 704(a)(5) include examining proofs of claim and objecting to improper claims when a purpose would be served. Where more than $100,000 is asserted against an estate from which substantial cash proceeds are being administered, a clear purpose exists for determining exactly what obligation remained, what had already been paid, and whether the amended amount was properly enforceable against estate assets.

## XII. POST-SATISFACTION CLAIM ACTIVITY REQUIRES TRANSACTION-BY-TRANSACTION RECONCILIATION

The relevant issue is therefore more precise than simply stating that "the HOAs increased their claims after satisfaction."

The documentary record shows three distinct patterns:

Westbury: Claim increased from $23,540.02 to $37,035.01 before satisfaction; $38,622.75 was reportedly paid at closing; the $37,035.01 judgment was subsequently satisfied.

Hilton Head Resort: Judgment satisfaction was filed June 2, 2026; Claim 26 was thereafter amended on July 8 to $92,731.78.

The Spa: A $31,084.41 proof of claim based upon the state judgment was followed by satisfaction through foreclosure on June 18, 2026; on August 13 the claim was amended upward to $105,716.77—an increase of $74,632.36.

These are objectively verifiable transactions.

They warrant comparison of: the original claims; amended claims; state judgments;

satisfactions; closing payments; postpetition assessments; attorney fees; payments credited; payments not credited; and whatever remaining debt each association contended survived.

That reconciliation has direct implications for the asserted solvency or insolvency of Ard's estate.

## XIII. CLAIMS WERE DISPUTED BEFORE THE DISTRIBUTIONS

These discrepancies cannot be separated from the fact that Ard had already challenged the HOA obligations.

She had filed objections to proofs of claim, adversary proceedings, state-court Rule 60 challenges, requests for accounting, allegations concerning unauthorized assessments and fees, and other proceedings contesting the amounts and enforceability of the debts.

Thus, the Trustee was not confronted with facially uncontested obligations.

The February Sale Order itself acknowledged that disputes existed and directed disputed amounts to remain attached to proceeds until resolution.

Ard further states that she filed a bankruptcy-fraud complaint with the Department of Justice concerning aspects of the HOA conduct and had placed the Trustee and Court on notice of the asserted discrepancies.

The issue presented for referral is therefore whether estate money was distributed in accordance with the Sale Order and the Bankruptcy Code despite actual notice of these disputes.

## XIV. TRUSTEE'S DUTY TO EXAMINE PROOFS OF CLAIM

Section 704(a)(5) is particularly relevant.

A Chapter 7 trustee must, where a purpose would be served, examine proofs of claim and object to the allowance of improper claims.

A purpose plainly exists where payment of a claim will reduce the amount available to other creditors or any potential surplus available to debtors.

Here the record contains:

materially changing claim amounts;

post-satisfaction claim amendments;

payments differing from proof-of-claim amounts;

pending challenges to the underlying debts;

and an express judicial directive preserving disputed amounts.

The question warranting investigation is whether adequate claim reconciliation occurred before or after estate funds were distributed.

## XV. CURRENT ACCOUNTING IS NECESSARY TO DETERMINE WHETHER THE ESTATE IS ACTUALLY INSOLVENT

The significance of the amended claims becomes particularly apparent when they are considered against the $318,026.82 in aggregate reported net sale proceeds.

A conclusion that the estate is insolvent depends heavily upon which claims remain valid and unpaid.

For example, The Spa's amendment alone increased its asserted bankruptcy claim by $74,632.36 after the satisfaction-through-foreclosure entry.

Whether that amount is properly allowable materially affects the estate's mathematical position.

Likewise, Hilton Head Resort continued to assert $92,731.78 through its July 8 amendment after its June 2 satisfaction of judgment.

Accordingly, before an assertion of insolvency can be accepted as fact, there should be a reconciliation identifying:

1. every claim presently asserted;

2. every claim allowed;

3. every claim disputed;

4. every claim already satisfied in whole or part;

5. every distribution made directly at closing;

6. every post-closing distribution;

7. every credit applied against the claims;

8. administrative expenses paid or reserved;

9. professional compensation paid or anticipated;

10. taxes paid or outstanding;

11. current cash held by the Trustee; and

12. the resulting balance or deficiency.

Without those numbers, the characterization "insolvent" remains a conclusion rather than a demonstrated financial condition.

## XVI. REPEATED REQUESTS FOR INFORMATION AND CONTINUED ABSENCE OF AN UPDATED LEDGER

Ard further submits that the lack of transparency is not attributable to her failure to seek information.

Ard states that she has requested on several occasions that Trustee Campbell provide an accounting or otherwise disclose the current state of the estate.

Those requests sought information concerning funds collected, funds retained, payments made, amounts remaining, and the status of administration.

Yet more than ninety days after the June 29 closing, Ard states that she still has not received an updated consolidated estate ledger accounting for what occurred after the Trustee's Reports of Sale documented aggregate net proceeds of $318,026.82.

That history matters under § 704(a)(7), which generally requires a trustee, unless the

Court orders otherwise, to furnish information concerning the estate and its administration when requested by a party in interest.

Ard therefore respectfully submits that the absence of current information should not be used against her by simultaneously asking another court to accept insolvency as an established fact.

## XVII. EXPEDITIOUS ADMINISTRATION UNDER § 704(a)(1)

Congress expressly required a Chapter 7 trustee to close an estate:

"as expeditiously as is compatible with the best interests of parties in interest."

Ard recognizes the qualifying language "as is compatible with the best interests of parties in interest." She therefore does not contend that ninety days automatically constitutes unlawful delay or that a final report was legally due exactly ninety days after the final real-estate closing. Rather, the duration becomes relevant because:

the major real-property liquidations have occurred;

substantial creditor payments occurred at closing;

substantial net proceeds were received;

the Debtors have repeatedly requested information;

the estate's alleged insolvency is now being relied upon;

and no current consolidated accounting has been supplied showing the financial transactions occurring after those proceeds came into the Trustee's possession.

If continuing administration justifies retaining the estate open, the Trustee should be able to identify that administration and its anticipated financial consequences.

The combination of continued retention, changing claims, disputed distributions, and lack of a current reconciliation warrants scrutiny.

## XVIII. EXEMPTIONS AND POTENTIAL SURPLUS

The financial accounting is also important because Ard and Nicola received no exemption distribution from the reported sales.

The Reports of Sale identify the Debtors' exemption as "N/A," including the final Unit 4405 report.

Ard contends that the Trustee initially challenged exemptions because incorrect statutory provisions had been used. After the Debtors attempted to correct their exemptions, the Trustee opposed the amended exemptions on the ground that the issue had already been adjudicated.

The objection was ultimately sustained.

Thus, the Trustee liquidated the properties, paid substantial obligations from closing proceeds, retained substantial net estate proceeds, and the Debtors received no exemption distribution.

This does not establish that a surplus presently exists. It makes accurate determination of the estate's current balance especially consequential.

## XIX. CONNECTION TO THE APPOLINE PROPERTY AND THIS MICHIGAN PROCEEDING

The accounting issue is not presented merely to litigate a grievance concerning another bankruptcy case.

The Perry Trustee is presently seeking recovery of the Appoline property from Ard.

Ard's own South Carolina estate simultaneously remains under administration.

Whether Ard's estate actually requires additional assets, possesses a substantial surplus, has unresolved claims against third parties, or remains genuinely insolvent may bear upon representations and positions advanced concerning Ard's property interests.

This Court should therefore not be asked to rely upon the asserted financial condition of the South Carolina estate without an ascertainable factual basis.

## XX. GROUNDS SUPPORTING INDEPENDENT INVESTIGATION

Considered collectively, the documentary record presents multiple questions suitable for independent investigation:

1. Four properties generated approximately $865,919.29 in reported sales.

2. The Reports of Sale reflect aggregate net proceeds of $318,026.82 flowing to the estate.

3. The final June 29 sale alone produced $153,454.84 net, which the Trustee expressly reported as entirely retained at that time. Doc 325 Report of Sale 4405(3)

4. More than ninety days have elapsed since that final sale.

5. Ard states that she repeatedly requested current financial information but has not received a consolidated updated accounting.

6. The estate nevertheless continues to be characterized as insolvent.

7. The Sale Order expressly required disputed amounts to attach to sale proceeds pending resolution.

8. Westbury received $38,622.75 despite a $37,035.01 amended claim and later satisfied its judgment.

9. Hilton Head Resort filed a satisfaction of judgment on June 2 but amended its bankruptcy claim on July 8 to assert $92,731.78.

10. The Spa's original $31,084.41 claim was amended on August 13 to $105,716.77 after the state docket reflected satisfaction through foreclosure—a $74,632.36 increase.

11. Ard had already challenged the validity and amounts of the HOA debts.

12. The Trustee had a statutory duty to examine potentially improper claims where a purpose would be served.

13. The current balance, subsequent distributions, remaining allowed claims, and precise

mathematical basis for insolvency have not been demonstrated to Ard through the requested updated reconciliation.

Individually, some of these matters may have legitimate explanations.

Collectively, they warrant obtaining the underlying records so those explanations can be tested rather than assumed.

## XXI. REQUESTED REFERRAL

Ard respectfully requests that the Court determine whether these circumstances provide reasonable grounds under 18 U.S.C. § 3057(a) to conclude that "an investigation should be had" concerning the administration of the South Carolina bankruptcy estate.

If so, Ard requests referral to the appropriate United States Attorney and transmission of the relevant documentary record.

Ard does not request that the Court identify a criminal target or determine criminal intent.

Those questions should remain with the appropriate investigative authorities.

## XXII. PRESERVATION OF EVIDENCE

Ard further requests preservation, to the extent within this Court's authority, of records concerning:

Trustee bank accounts and statements; estate ledgers; receipts; disbursement records; canceled checks; wire transfers; closing statements; payoff requests; creditor communications; HOA ledgers; proofs of claim and amendments; documents supporting post-satisfaction claims; satisfactions of judgment; communications concerning the Sale Order's disputed-funds provision; tax payments; professional fees; auction expenses; Trustee compensation; current cash balances; distributions occurring after June 29, 2026; and communications concerning the asserted solvency or insolvency of the Ard estate.

The records should permit investigators to reconstruct:

what the estate received;

what the estate paid;

to whom it was paid;

when it was paid;

under what authority it was paid;

what remains; and

what valid liabilities remain against that balance.

## XXIII. PRAYER FOR RELIEF

**WHEREFORE**, Jacqueline E. Ard respectfully requests that this Court:

A. Consider whether the documented circumstances establish reasonable grounds under 18 U.S.C. § 3057(a) for referral concerning possible bankruptcy-related misconduct or, independently, whether an investigation should be conducted;

B. If the statutory threshold is satisfied, refer the relevant facts and circumstances to the appropriate United States Attorney;

C. Direct preservation, to the extent within this Court's lawful authority, of records necessary to trace the South Carolina estate's receipts, claims, distributions, and remaining funds;

D. Require any party relying in this Michigan proceeding upon the proposition that the Ard bankruptcy estate is insolvent to identify the accounting, ledger, Trustee report, or other factual evidence supporting that representation;

E. Take judicial notice, where appropriate, of the existence and filing dates of the Reports of Sale, claims register, proofs of claim and amendments, satisfactions of judgment, and other judicial records, without accepting disputed allegations contained in those filings as established facts;

F. Permit Ard to supplement the record with her prior written requests for accounting and

the Trustee's responses or nonresponses, so the Court can evaluate the history under 11 U.S.C. § 704(a)(7);

G. Preserve the question of whether any challenged proof of claim or distribution was lawful for determination by the court or investigative authority possessing jurisdiction over that question;

H. Grant such further preservation, disclosure, evidentiary, referral, or other relief as the Court determines lawful and appropriate.

Respectfully submitted,

OCT 5, 2026

Jacqueline Elizabeth Ard
Defendant/Counterclaimant, Pro Se
Mailing Address:
21215 Dartmouth Dr
Southfield, MI 48076

Physical Address:
15826 Appoline
Detroit, MI 48204
(313) 770-7051